Filed 7/28/16  Park v. Aurora Loan Services LLC CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SEAN M. PARK et al., | D068076 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2013-00076284-CU-OR-CTL) |
| AURORA LOAN SERVICES LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed in part and reversed in part.

George H. Bye and Stephen F. Lopez for Plaintiffs and Appellants.

Akerman, Justin D. Balser, Alicia Hou and Ashley E. Calhoun for Defendants and Respondents Aurora Loan Services, Aurora Commercial Corporation, as successor by merger to Aurora Bank FSB f/k/a/ Lehman Brothers Bank FSB; U.S. Bank, as Trustee for Lehman Mortgage Pass-through certificates, series 2005-2; Mortgage Electronic Registration Systems, Inc.; and Nationstar Mortgage LLC.

McCarthy & Holthus, Melissa Robbins Coutts and Matthew B. Learned for Quality Loan Service Corporation.

Sean and Michelle Park brought an action alleging numerous causes of action against numerous parties after their home was sold in a nonjudicial foreclosure sale. The court sustained defendants' demurrer without leave to amend as to all causes of action and all defendants. The Parks appeal, contending the court erred in determining their complaint did not state a cause of action and/or in concluding they could not amend the complaint to allege a valid cause of action. We affirm in part and reverse in part.

OVERVIEW

During the past decade, banks and other financial institutions engaged in home loan securitization involving the complex transfer of secured home loans among numerous entities. This resulted in homeowners frequently owing their mortgage obligations to entities other than the original lender. After the collapse of the housing market, many of these third party entities instituted foreclosure proceedings. The California Supreme Court recently held that a homeowner whose property is sold in a foreclosure sale has standing to sue for wrongful foreclosure based on an allegation the foreclosing entity received its claimed ownership interest in the secured debt through a void (as opposed to voidable) preforeclosure assignment. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929-943 (*Yvanova*).)

Although this case arises from a similar factual scenario, the case is somewhat different because the central issue is not the validity of a preforeclosure assignment of the

secured debt.  Instead, plaintiffs allege the foreclosing entity did not have an ownership interest in the loan until *after* the foreclosure sale (if at all) and the foreclosing entity was not acting on behalf of the beneficial owner at the time of the sale.  As this court recently held, this allegation can support a wrongful foreclosure cause of action.  (*Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552 (*Sciarratta*).)  A party may successfully challenge a nonjudicial foreclosure sale on the basis that the foreclosing entity had no ownership interest in the underlying secured debt at the time of the sale, even if the entity later acquired an interest.  (*Id.* at pp. 561-565.)  Additionally, for purposes of overcoming a demurrer on a wrongful foreclosure claim, a party need only allege the foreclosing entity's void or nonexistent interest was the cause in fact of the homeowner's alleged injury; no showing of tender or additional prejudice is required. (*Id.* at pp. 565-567.)

Based on these principles and various additional conclusions, we determine the Parks have stated causes of action against the alleged foreclosing entity (Aurora Loan Services LLC) for wrongful foreclosure, violation of the statutory unfair competition statute (UCL), and quiet title.  We also conclude the court erred in sustaining a demurrer on a quiet title cause of action against a third party (Nationstar Mortgage LLC (Nationstar)) that allegedly acquired title to the subject property with notice of the deficiencies in the foreclosure sale.  We determine the trial court properly sustained defendants' demurrer on all other causes of action and as to all other parties, but hold the court erred in denying the Parks' request for leave to amend their complaint as to some parties on some of the causes of action.

3

## FACTUAL AND PROCEDURAL BACKGROUND

In setting forth the facts, we assume the truth of the properly pleaded facts and matters subject to judicial notice. (*Yvanova, supra*, 62 Cal.4th at p. 924.)

In October 2005, the Parks purchased residential property (Property) for $1,225,000. The Parks paid $441,681.56, and obtained a loan from Lehman Brothers Bank, FSB for the remaining amount. The loan was evidenced by a promissory note (Note) and secured by a deed of trust (Deed of Trust) on the Property.

The Deed of Trust named the Parks as the Trustors; Lehman Brothers Bank as the Lender; and Chicago Title as the Trustee. The Deed of Trust identified Mortgage Electronic Registration Systems, Inc. (MERS) as a "beneficiary of this Security Instrument . . . (solely as nominee for Lender and Lender's successors and assigns)." The Deed of Trust provided: "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS . . . has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." The Deed of Trust also stated: "The Note . . . (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

At an unidentified time, the Lender (Lehman Brothers Bank) became Aurora Bank. The Parks' amended complaint names only Aurora Bank as a party (and not Lehman Brothers Bank), and in so doing, identifies Aurora Bank as "Aurora Bank FSB

4

f/k/a [formerly known as] Lehman Brothers Bank . . . ."  Based on this allegation, we assume for purposes of this opinion that Aurora Bank is a full successor-in-interest to Lehman Brothers Bank, and that Lehman Brothers Bank is no longer an existing entity.

From the outset of the loan, Aurora Loan Services (an entity separate from Aurora Bank) acted as the loan servicer on the Note.  For the next three years, the Parks made regular monthly payments of $6,000 to Aurora Loan Services.  During this time, the Note was allegedly sold to an unidentified transferee.

On June 9, 2009, in response to the Parks' inquiry, Aurora Loan Services sent the Parks a letter stating:  "The investor for your loan is U.S. Bank, N.A., in trust for, Lehman XS TrustMortgage Pass-Through Certificates, Series 2007-17H" (hereafter Lehman Trust Series 2007).  The letter additionally stated that all inquiries should be sent to Aurora Loan Services as the loan servicer, and identified its address and phone number.

The next month, the Parks sent Aurora Loan Services "hardship letters," explaining their "difficult financial circumstances" resulting from the "economy and the lackluster real estate business."  They asked whether they could qualify for a more affordable mortgage payment through a loan modification.  An Aurora Loan Services agent (identified as Nicole) responded that "to qualify for a permanent modified loan agreement under Aurora's new program, [the Parks] must immediately stop making their regular loan payments and intentionally default on their Note."

Relying on Aurora Loan Services' representation that this was the only way they could qualify for a loan modification, the Parks followed these instructions and stopped

5

making their mortgage payments, "greatly lower[ing] their stellar credit scores and suffer[ing] financial damage."

About one month later, in late August 2009, Aurora Loan Services sent the Parks a letter discussing programs available to help homeowners retain their homes.

Two months later, on October 15, 2009, Mary Jane Sarne, identified as a MERS vice-president, signed a Substitution of Trustee document. In the document, MERS stated it was the nominee and the present beneficiary under the Deed of Trust, and that Quality Loan Service Corporation (Quality) is substituted as the trustee on the Deed of Trust, replacing Chicago Title. The Parks alleged on information and belief that Sarne had no corporate authority to sign the document as she allegedly was not an employee of MERS and that MERS was not the " 'present beneficiary.' "

The next day, on October 16, Quality "as agent for beneficiary" recorded a Notice of Default. (Capitalization omitted.) The Notice of Default stated the Parks had the right to reinstate the loan if they pay the outstanding balance ($20,963.31), or the Property would be sold under nonjudicial foreclosure procedures. The notice also stated that to arrange for payment or to obtain any additional information, the Parks should contact Aurora Loan Services at an identified address and/or phone number.

About six weeks later, on November 30, 2009, the October 15 Substitution of Trustee (naming Quality as trustee) was recorded.

About one week later, on December 8, Aurora Loan Services agreed to accept reduced monthly payments for six months, and the Parks "were told . . . that [Aurora Loan Services] would permanently modify [the loan] after the 6th payment." However,

6

after the Parks made their last payment in May 2010, "there was no response from Aurora or any communication whatsoever concerning a permanent modification."

Shortly after, on June 2, 2010, plaintiffs sent Aurora Loan Services a letter requesting their original loan documents.

The next day, on June 3, Aurora Loan Services denied the Parks' permanent loan modification request. On the same date, in response to the Parks' inquiry, Aurora Loan Services sent the Parks a letter stating: "Aurora Loan Services provides the servicing for the owner of your loan. Contact information for the owner is as follows: [¶] U.S. Bank, N.A., in trust for, Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2005-2 [hereafter Lehman Trust Series 2005-2] . . . . [¶] Please direct all questions regarding the servicing of the loan to: [¶] Aurora Loan Services . . . ." Aurora Loan Services also provided U.S. Bank's address and phone number.

The Parks alleged that it is their understanding that the Note "was supposed to be [transferred and] properly securitized into a mortgage-back[ed] security which was to be 'pooled' together," *but that this transfer never occurred*. The Parks alleged "their Note was *not* securitized and that neither the [Lehman Trust Series 2007] nor the [Lehman Trust Series 2005-2] have any legal, equitable, or monetary interest in their Note . . . ."[1] (Italics added.)

---

[1] The complaint also contains inconsistent allegations that the Note and Deed of Trust *was* securitized, but was not properly conveyed into either Lehman trust.

On October 19, 2010, Quality recorded a Notice of Trustee's Sale, scheduling a foreclosure sale. About one month later, on November 16, the trustee's sale was held and Aurora Loan Services purchased the property for $823,840.21 using a credit bid. The Trustee's Deed Upon Sale (Trustee's Deed) was recorded six days later, on November 22. The Trustee's Deed identifies Aurora Loan Service as the "Grantee" and states "The grantee herein **IS** the foreclosing beneficiary." A stamp on the document states "This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as its effect upon title." The Trustee's Deed also states that all legal requirements have been satisfied, including the mailing and delivery of the recorded October 16, 2009 Notice of Default and other statutorily-required notices.

After the sale, the Parks filed complaints with various state and federal agencies asserting the foreclosure was unlawful and unauthorized. In responding to one of these complaints in December 2012, the attorney for Aurora Loan Services enclosed a December 15, 2010 assignment of the Deed of Trust to Aurora Loan Services. This date is one month *after* the foreclosure sale took place. The notarized document is entitled "CORPORATE ASSIGNMENT OF DEED OF TRUST," and states that MERS, as nominee for Lehman Brothers Bank and its successors and assigns, "hereby grants, assigns, and transfers to AURORA LOAN SERVICES LLC . . . all beneficial interest under the [Deed of Trust]." The document was signed on December 15, 2010, by Jan Walsh, identified as a MERS vice-president. The Parks alleged that the document is "invalid as it is dated *after* the Trustees Deed Upon Sale occurred" on November 16, 2010. The Parks also alleged they "believe" this document "is a forgery."

8

Three years and three days after the foreclosure sale, on November 19, 2013, the Parks filed a superior court complaint challenging the foreclosure sale and other aspects of the foreclosure process. About six weeks later, on December 31, 2013, Aurora Loan Services recorded a quitclaim deed dated April 10, 2012, transferring the Property to Nationstar, which had filed unlawful detainer actions seeking to evict the Parks and/or their tenants from the Property.

As later amended, the Parks' complaint named several defendants, including: (1) Aurora Loan Services; (2) "Aurora Bank FSB f/k/a Lehman Brothers Bank, FSB"; (3) Quality (the substituted trustee); (4) U.S. Bank, as trustee for the Lehman Trust Series 2005-2 and for the Lehman Trust Series 2007; (5) MERS; and (6) Nationstar. The Parks' causes of action included: (1) wrongful foreclosure; (2) two fraud claims; (3) quasi-contract; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) violation of the UCL; (7) intentional infliction of emotional distress; (8) quiet title; (9) negligence; and (10) accounting.[2]

We shall detail the relevant allegations in the Discussion section below. But the essence of the allegations was that the foreclosure was wrongful because it was initiated by an entity (Aurora Loan Services) without the authority to foreclose; the Parks were unaware of the true owner of the loan and their mortgage payments may not have gone to the true owner; the Parks' mortgage payments were not properly credited to their

---

[2]    The Parks also brought related federal actions, some of which may still be pending. Because there is no contention the federal actions overlap with or have any preclusive effect on this lawsuit, we omit a discussion of these claims in this opinion.

9

outstanding balances; and Aurora Loan Services and the entities it represented acted improperly in the loan modification process.

Defendants demurred on numerous grounds, including the statute of limitations, lack of standing, and the failure to allege necessary elements of each cause of action. After the Parks filed an opposition and a supplemental opposition, the court sustained the demurrer without leave to amend on each of the Parks' claims, and entered judgment in defendants' favor.

In their appellate briefs, the Parks contended the court erred as to each defendant and each cause of action, except negligence and accounting.  At oral argument, the Parks' counsel clarified that on appeal (1) the Parks are challenging the court's ruling only on their wrongful foreclosure, UCL violation, and quiet title causes of action; (2) the Parks are not challenging the court's rulings as to Aurora Bank on any cause of action; and (3) the Parks are challenging the court's ruling as to Quality only on the quiet title claim.  We accept these concessions and address only the challenged claims and parties.

DISCUSSION

I. *Review Standards*

In reviewing a judgment after a demurrer is sustained without leave to amend, we examine whether the complaint alleged facts sufficient to state a cause of action under any legal theory.  (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487.) We assume the truth of the alleged facts and all facts that may be reasonably inferred from the allegations and also consider documents properly subject to judicial notice. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6; *Schifando v. City of Los Angeles* (2003)

10

31 Cal.4th 1074, 1081 (*Schifando*).) However, we do not assume the truth of contentions, deductions or conclusions of fact or law. (*Evans, supra*, at p. 6.) We apply a de novo review standard, and are not bound by the court's stated reasons. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)

In reviewing the court's refusal to permit an amendment, we are governed by an abuse of discretion standard. (*Schifando, supra*, 31 Cal.4th at p. 1081.) The court abuses its discretion if there is a reasonable possibility an amendment would cure the defects. (*Ibid.*) An appellant has the burden to show how the complaint could be amended to state a viable cause of action. (*Ibid.*)

Under these principles, we examine each of the Parks' challenged causes of action to determine whether the allegations state a valid cause of action, and if not, whether there is a reasonable possibility the Parks could amend to cure the defects.

## II. *Wrongful Foreclosure Claim*

### A. *General Legal Principles*

Generally, the elements of a wrongful foreclosure cause of action are: " '(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trust or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.' " (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408.)

11

With respect to the first element, a "foreclosure initiated by one with no authority to do so is wrongful for purposes of such an action. [Citations.] [O]nly the original beneficiary, its assignee or an agent of one of these has the authority to instruct the trustee to initiate and complete a nonjudicial foreclosure sale." (*Yvanova*, *supra*, 62 Cal.4th at p. 929.)

In *Yvanova*, the California Supreme Court considered the issue whether a borrower has standing to challenge a completed nonjudicial foreclosure on the ground that the foreclosing party was not a valid assignee of the original lender. (*Yvanova*, *supra*, 62 Cal.4th at pp. 929-943.) The court held a borrower does have standing to challenge an alleged assignment of the note and deed of trust on the basis the assignment was void (as opposed to voidable). (*Id.* at p. 943.) The court reasoned that a "homeowner who has been foreclosed on by one with no right to do so has suffered an injurious invasion of his or her legal rights at the foreclosing entity's hands." (*Id.* at p. 939.) In so holding, the high court disapproved a line of Court of Appeal decisions reaching a contrary conclusion. (*Id.* at p. 939, fn. 13; see *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75 (*Siliga*); *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495 (*Herrera*); *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256 (*Fontenot*).)

Beyond its standing holding, the *Yvanova* court declined to consider whether the plaintiff had adequately alleged the three elements of the wrongful foreclosure tort (a wrongful foreclosure, prejudice, and tender). (*Yvanova, supra*, 62 Cal.4th at pp. 924,

12

943.) But this court recently considered these issues. (*Sciarratta, supra*, 247 Cal.App.4th 552.) In *Sciarratta*, the plaintiff alleged a bank foreclosed on the plaintiff's home despite that the bank did not obtain legal ownership of the note and deed of trust until one month after the foreclosure sale. (*Id.* at pp. 556-559.) As explained in more detail below, we held the plaintiff's allegations were sufficient to state a wrongful foreclosure claim under California law. (*Id.* at pp. 561-567.)

B. *Analysis of the Demurrer on the Parks' Wrongful Foreclosure Claim*

1. *Summary*

Defendants demurred to the Parks' wrongful foreclosure cause of action on several grounds, including the claim was untimely and the Parks had no standing to challenge the foreclosure. The court sustained the demurrer based primarily on its conclusion the Parks lacked standing to bring the claim (relying on existing authority supporting the no-standing rule).

During the pendency of the appeal, the California Supreme Court filed *Yvanova*, and both parties had the opportunity to brief the impact of that decision on the appellate issues. Based on *Yvanova* and our recent *Sciarratta* decision, we conclude the Parks have alleged a valid and timely wrongful foreclosure cause of action against Aurora Loan Services. We also determine the Parks failed to allege a sufficient factual basis for holding any of the other defendants liable for the wrongful foreclosure tort. On the Parks' contention they should have been given leave to amend to add additional facts, we agree as to U.S. Bank and MERS.

13

2. *Pleading Sufficient on Elements of Cause of Action Against Aurora Loan Services*

In their amended complaint, the Parks alleged that Aurora Loan Services was the entity that initiated the foreclosure sale and made the successful bid at the sale, but that Aurora Loan Services had no right to foreclose because it was not the Note owner or the beneficiary of the Deed of Trust, nor was it acting as an agent for these parties at the time of the sale. This allegation is sufficient to show the first element of the wrongful foreclosure cause of action. (*Sciarratta, supra*, 247 Cal.App.4th at pp. 561-565.) "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security." (*Yvanova, supra*, 62 Cal.4th at p. 938.)

In urging us to uphold the judgment on this cause of action, Aurora Loan Services argues that MERS "had a complete and unequivocal right to assign its beneficial interest in the deed of trust to Aurora [Loan Services], who was then entitled to foreclose as beneficiary . . . ." Although this may be true, the Parks have alleged (and the documentary evidence shows) that this assignment occurred on December 15, 2010, one month *after* the sale. Thus, at this stage of the litigation, this assignment is legally insufficient to show Aurora Loan Services had the authority as a beneficial owner to foreclose on the date of the foreclosure sale. (See *Sciarratta, supra*, 247 Cal.App.4th at pp. 564-565 [rejecting the argument that a " '[c]orrective [a]ssignment' " recorded one month after the foreclosure sale "has any relevant legal effect on the nonjudicial foreclosure occurring one month *prior*"].)

14

Aurora Loan Services alternatively contends a party need not have physical possession of the underlying promissory note to initiate a nonjudicial foreclosure sale. (See *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440 (*Debrunner*).)  We agree with this rule.  But the Parks are not seeking to hold Aurora Loan Services liable because it did not physically possess the Note.  The Parks have sued Aurora Loan Services for wrongful foreclosure based on the Parks' allegation that Aurora Loan Services was not the beneficial owner of the secured debt at the time of the foreclosure sale.  Under the reasoning of *Yvanova* and our holding in *Sciarratta*, this allegation supports that the foreclosure was wrongful.

Aurora Loan Services also contends the demurrer was properly sustained because under California law an entity need not have a beneficial interest in the underlying promissory note to initiate a nonjudicial foreclosure sale.  If Aurora Loan Services means that an entity may properly institute a foreclosure sale if it is acting as an agent for the party with the beneficial interest, we agree with this principle.  (See *Yvanova, supra*, 62 Cal.4th at pp. 927, 929.)  However, this rule does not help Aurora Loan Services in this case because the Parks have alleged that Aurora Loan Services was not acting as an agent for another party with respect to the foreclosure sale.  The Parks allege Aurora Loan Services purchased the Property on its own behalf at the foreclosure sale and took title in its own name.

But if Aurora Loan Services is suggesting that its foreclosure was appropriate because there is no requirement that a foreclosing entity be a beneficiary under the note *and* deed of trust, the argument is legally unsupported.  "The deed of trust . . . is

15

inseparable from the note it secures . . . ." (*Yvanova, supra,* 62 Cal.4th at p. 927; see *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291; see also *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553.) When a borrower defaults on the debt, only the entity entitled to enforce the note can properly foreclose on the deed of trust. (See *Yvanova*, at p. 938.) "A deed of trust may . . . be assigned one or multiple times over the life of the loan it secures. But if the borrower defaults on the loan, only the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process." (*Id.* at pp. 927-928.)

The decision relied upon by Aurora Loan Services, *Debrunner, supra*, 204 Cal.App.4th 433, does not support a different rule. In *Debrunner*, unlike what is alleged here, the foreclosing entity held a beneficial interest in both the debt and deed of trust. (*Id.* at p. 442.) The *Debrunner* court did not address the issue discussed in *Yvanova* and raised here: whether an entity who is *not* acting as the original beneficiary (or its assignee or agent) has the authority to foreclose under a power-of-sale clause in a deed of trust.

We conclude the Parks sufficiently alleged the first element of a wrongful foreclosure claim against Aurora Loan Services—that Aurora Loan Services foreclosed under the Deed of Trust's power-of-sale provision without having a ownership/beneficial interest in the Note or Deed of Trust, nor acting as an agent of the beneficial owner.

With respect to the second element of a wrongful foreclosure action—a showing of prejudice—this court recently held the prejudice element is satisfied if the foreclosing entity's beneficial interest in the deed of trust was void or nonexistent and the plaintiff

16

alleged the foreclosure caused harm. (*Sciarratta*, *supra*, 247 Cal.App.4th at pp. 565-567.) We reasoned, "[a] homeowner experiences prejudice or harm when an entity with no interest in the debt forecloses. When a non-debtholder forecloses, a homeowner is harmed because he or she has lost her home to an entity with no legal right to take it." (*Id.* at pp. 565-566.) In reaching this conclusion, we recognized the line of cases holding that a plaintiff cannot demonstrate prejudice if the plaintiff was in default and would not have avoided a foreclosure if the proper party had foreclosed. (*Id.* at p. 566; see, e.g., *Herrera, supra*, 205 Cal.App.4th 1495; *Fontenot, supra*, 198 Cal.App.4th 256.) However, we declined to follow those cases, explaining that those courts "did not have the benefit of the Supreme Court's decision in *Yvanova* and as a result incorrectly and exclusively focus[ed] on the plaintiff's ability to have avoided *any* foreclosure." (*Sciarratta*, at p. 566.)

As in *Sciarratta*, we conclude the Parks have sufficiently pled prejudice to satisfy the pleading requirements of a wrongful foreclosure cause of action. They alleged they suffered economic damages resulting from the foreclosure. That is all that is required at this stage of the litigation.

The third element of a wrongful foreclosure claim generally requires plaintiffs to establish they tendered the amount of the secured indebtedness or an exception to this tender requirement. (*Yvanova, supra*, 62 Cal.4th at p. 929, fn. 4.) In *Sciarratta,* we held a plaintiff is excused from the tender requirement if he or she alleged the foreclosing entity lacked authority to foreclose on the property. (*Sciarratta, supra*, 247 Cal.App.4th at p. 565, fn. 10; see *Yvanova, supra*, 62 Cal.4th at p. 929, fn. 4.) Under this principle,

17

the Parks have sufficiently alleged an exception to the tender requirement by their allegation that Aurora Loan Services lacked authority to foreclose on the Property.[3]

3. *Pleading Sufficient to Show Timely Claim Against Aurora Loan Services*

Aurora Loan Services alternatively demurred on the grounds that the Parks' wrongful foreclosure claim is time-barred.

Generally, the statute of limitations for wrongful foreclosure is three years. (See Code Civ. Proc., § 338, subds. (a), (d).) The Parks' property was sold at the foreclosure sale on November 16, 2010, and the Parks filed their complaint three years and three days later, on November 19, 2013. The Parks contend their complaint was nonetheless timely because they alleged they were unaware Aurora Loan Services was the foreclosing entity (acting as the beneficial owner on its own behalf and not as an agent of the beneficial owner) until the Trustee's Deed was recorded on November 22, 2010.

"A limitations period begins to run when the cause of action accrues. . . . The traditional common law rule is that a cause of action accrues at the time when the cause of action ' " 'is complete with all of its elements.' " ' . . . The discovery rule is an exception to the traditional common law rule. Under the discovery rule, the accrual of a

_____

3    Based on our conclusion the Parks alleged a valid wrongful foreclosure claim on the lack-of-ownership theory, we do not reach the Parks' alternate arguments that the foreclosure was wrongful because they alleged facts showing they were not in default at the time of the sale. We also do not reach the Parks' contentions based on the Homeowner Bill of Rights (HBOR). The HBOR statutory scheme did not become effective until January 1, 2013, after the events underlying this lawsuit, and does not have retroactive effect. (See *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 818; *Rockridge Trust v. Wells Fargo, N.A.* (N.D. Cal. 2013) 985 F.Supp.2d 1110, 1152.) We do not discuss in this opinion how the new legislation would impact the Parks' claims.

18

cause of action is delayed 'until the plaintiff discovers, or has reason to discover, the cause of action.'. . ." (*Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 102-103.) A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 398.)

Drawing all favorable reasonable inferences from the complaint's allegations, the Parks have adequately alleged they did not know and did not have a reasonable basis to suspect that the foreclosure sale was instituted by a party without the authority to do so until the Trustee's Deed was recorded on November 22, 2010.

Aurora Loan Services contends the Parks attended the foreclosure sale and thus must have known on the date of the sale that Aurora Loan Services was the purchaser at the sale. However, there is no allegation in the Parks' pleadings that they attended the foreclosure sale. In reviewing a demurrer, we are limited to viewing the allegations of the operative pleadings and the judicially noticeable materials. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 8-9, fn. 3.) Moreover, although the Parks do indicate in their appellate briefs that they attended the foreclosure sale, this statement is accompanied by their statement that at the sale they "witnessed" the trustee accepting a credit bid "made by [Aurora Loan Services] *allegedly on behalf of its' alleged principal.*"[4] (Italics added.) To the extent Aurora Loan Services was making the bid as

---

4    In their reply brief, the Parks elaborate that no Aurora Loan Services representative appeared at the foreclosure sale, and the auctioneer was on a cell phone when he conducted the bidding. These facts are not contained in the amended complaint.

an agent on behalf of the current lender (or valid assignee), this would not necessarily have given the Parks actual or constructive notice that the foreclosure was being instituted by an unauthorized party.

We also find unavailing Aurora Loan Services's reliance on its June 2009 and June 2010 letters to the Parks to show the wrongful foreclosure claim is untimely. In the June 2009 letter, Aurora Loan Services identified the "investor for your loan" as U.S. Bank, as trustee for the Lehman Trust Series 2007. In the June 2010 letter, Aurora Loan Services identified the "owner" of the Note as U.S. Bank, as trustee for the Lehman Trust Series 2005-2. Aurora Loan Services argues these letters should have "call[ed] the identity of the owner of the loan into question" no later than mid-2010.

We disagree. The fact that a promissory note has been sold or assigned would not lead a reasonable person to suspect a later wrongful foreclosure. "A promissory note is a negotiable instrument the lender may sell without notice to the borrower." (*Yvanova, supra*, 62 Cal.4th at p. 927.) The alleged Note transfers do not necessarily suggest the Parks should have been on notice that an entity without authority would ultimately foreclose on the Property.

The Parks have alleged sufficient facts to show they did not, and had no reason to, discover the alleged wrongful foreclosure until the Trustee's Deed was recorded. Thus, at the pleading stage, the statute of limitations does not bar this action. The Trustee's Deed

20

was recorded on November 22, 2010, and the complaint was filed less than three years later on November 19, 2013.[5]

#### 4. *Wrongful Foreclosure Claim Against U.S. Bank*

In their wrongful foreclosure claim against U.S. Bank, the Parks alleged that Aurora Loan Services was, at times, acting as U.S. Bank's agent in the foreclosure process. They also alleged that Aurora Loan Services falsely identified U.S. Bank as a trustee for entities that had an ownership interest in the Note and Deed of Trust.

Generalized agency allegations are generally insufficient to meet pleading requirements. (See *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 134, fn. 12.) Where, as here, a complaint "does not allege any conduct on [the defendant's] part caused any harm, loss or damage on the plaintiffs' part," the addition of boilerplate agency allegations "do not result in the complaint stating a cause of action against" the defendant. (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829.)

However, because Aurora Loan Services allegedly represented to the Parks that U.S. Bank (as trustee) owned the Note and Deed of Trust, there is at least a reasonable possibility an amendment could support liability. The Parks suggest that although U.S. Bank never obtained legal ownership over the Note, U.S. Bank and Aurora Loan Services may have treated the attempted transfer as valid. If the Parks allege specific facts showing that Aurora Loan Services's alleged wrongful actions were directed or controlled

---

5    Based on this conclusion, we do not reach the Parks' alternate argument that the wrongful foreclosure action was timely because it was based on a breach of contract and thus was subject to a four-year limitations period.

21

by U.S. Bank, the Parks could state a cause of action against U.S. Bank. (See *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1171.) On remand, the Parks should be given leave to amend the complaint to add such allegations showing a factual basis for wrongful foreclosure liability against U.S. Bank.

### 5. *Wrongful Foreclosure Claim Against MERS*

The court properly sustained the demurrer on the Parks' wrongful foreclosure claim against MERS because the Parks did not allege facts showing MERS involvement in the wrongful foreclosure and/or have not adequately explained their theory of liability against MERS.

However, because the complaint contains allegations showing that MERS remained a nominee/beneficiary on the Deed of Trust at the time of the foreclosure sale, and was involved in transferring the Property to Aurora Loan Services after the foreclosure sale, the Parks should be given leave to amend the complaint to add allegations showing a factual basis (if any exists) for holding MERS liable for the wrongful foreclosure tort.

### 6. *Wrongful Foreclosure as to Aurora Bank, Nationstar, and Quality*

Based on the Parks' concessions, we conclude the court properly sustained the demurrer without leave to amend on their wrongful foreclosure claim against Aurora Bank, Nationstar, and Quality.

### III. *UCL Violation Claim*

The Parks alleged a UCL cause of action against all defendants. (Bus. & Prof. Code, § 17200.)

22

The UCL "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts."  (*Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134, 1143.)  The UCL " 'borrows' violations from other laws by making them independently actionable as unfair competitive practices."  (*Ibid.*)  To pursue a UCL action, a plaintiff must show he or she has suffered actual injury.  (Bus. & Prof. Code, § 17204.)  "A private plaintiff must make a twofold showing:  he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition."  (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1590.)

The Parks premised their UCL cause of action on the same factual allegations that underlie their wrongful foreclosure claim.  Based on our conclusion the Parks have alleged a valid claim for wrongful foreclosure against Aurora Loan Services, we similarly conclude the allegations are sufficient to state a UCL claim against Aurora Loan Services.  The Parks have adequately pled a predicate wrongful act for purposes of a UCL claim.  (See *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1101 (*Glaski*); *Susilo v. Wells Fargo Bank, N.A.* (C.D. Cal. 2011) 796 F.Supp.2d 1177, 1196; *Westfall v. Mortgage Electronic Registration Systems, Inc*. (S.D. Cal. 2016) 2016 WL 1241520.)

We reject Aurora Loan Services's contention that the Parks did not allege the requisite injury to show their legal standing to bring the UCL claim.  The Parks alleged they suffered harm from the alleged wrongful foreclosure, including the loss of their home.  As this court recently observed, when a homeowner alleges foreclosure by one with no right to do so, their damages may potentially include the loss of their home or

23

other related damages such as moving expenses, lost rental income, or damage to their credit. (*Sciarratta, supra*, 247 Cal.App.4th at p. 567.) The issue whether those damages were actually sustained under the particular circumstances here are not before us. At this stage of the litigation, the Parks have adequately alleged the type of harm necessary to provide them with standing to bring a UCL claim against Aurora Loan Services.

Based on the discussion above and our reasoning on the wrongful foreclosure cause of action, we conclude the court properly sustained the demurrer on the UCL claim with respect to U.S. Bank and MERS, but erred in failing to provide the Parks leave to amend the claim against these defendants. Based on the Parks' concessions, the court properly sustained the demurrer without leave to amend their UCL claim against Quality, Aurora Bank, and Nationstar.

IV. *Quiet Title Claim*

The Parks alleged a quiet title claim against all defendants, asserting the foreclosure sale was void, and thus defendants have no right, title, interest, or estate in the property.

A quiet title cause of action generally has two elements: (1) "the plaintiff is the owner and in possession of the land," and (2) "the defendant claims an interest therein adverse to [the plaintiff]." (*South Shore Land Co. v. Petersen* (1964) 226 Cal.App.2d 725, 740; see *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 802-803; Code Civ. Proc., § 761.020.)

A. *Aurora Loan Services and Nationstar*

The court erred in sustaining the demurrer as to Aurora Loan Services and Nationstar on the quiet title claim. As we have explained, the Parks have alleged facts showing the foreclosure sale was void because the sale was allegedly instituted by a party with no ownership interest in the debt. After a void foreclosure sale, the former homeowner may bring a quiet title against the foreclosing entity and regain ownership of the property "at least where there are no intervening third parties." (*Sciarratta, supra*, 247 Cal.App.4th at pp. 567-568; *Glaski, supra*, 218 Cal.App.4th at pp. 1100-1101.)

Nationstar is an alleged intervening or third party to the foreclosure sale. After the Parks filed their complaint, Aurora Loan Services recorded a quitclaim deed showing the property was transferred to Nationstar on April 10, 2012. A conclusive presumption exists in favor of a bona fide purchaser for value (BFP) if the trustee's deed (as here) states the trustee complied with all legal requirements. (Civ. Code, § 2924.) A bona fide purchaser for value " 'is one who pays value for the property without notice of any adverse interests or of any irregularity in the sale proceedings. . . .' " (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1250.) " 'A person generally has "notice" of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact. . . .' " (*Id.* at p. 1252.) Generally, "the issue of whether a buyer is a BFP is a question of fact." (*Id.* at p. 1254.)

The Parks argue their allegations support that Nationstar is not a BFP because Nationstar acquired the Property with notice of their adverse interests. They assert the quitclaim deed was "backdated" and that the Property was not actually transferred to

25

Nationstar until *after* the Parks filed their complaint. In support, they point to their allegations showing: (1) they began challenging the foreclosure sale shortly after the sale occurred; (2) Aurora Loan Services did not mention Nationstar's purported ownership interest in its letters to administrative agencies responding to the Parks' complaints regarding the foreclosure sale; (3) Aurora Loan Services did not raise the issue of Nationstar's ownership status when the initial demurrer was filed on December 20, 2013; (4) the quitclaim deed was not recorded until 11 days after defendants filed their demurrer; (5) the quitclaim deed states it was signed on April 10, 2012, but it was not notarized until two months later on June 12, 2012; and (6) the quitclaim deed was executed on behalf of Aurora Loan Services by Corey Nove, a former vice-president of Nationstar.

Taken together, these facts are sufficient to support a conclusion that Nationstar was not a bona fide purchaser of the property for value, and thus the allegations are sufficient to support a quiet title action against Nationstar. In reaching this conclusion, we do not suggest that the Parks will be able to prove this claim. But under the applicable liberal pleading standards, the Parks have alleged sufficient facts to overcome a demurrer on this issue.

Additionally, on the quiet title claim, we recognize that generally borrowers with delinquent loan obligations may not quiet title against a secured lender without first paying the outstanding debt on which the mortgage or deed of trust is based. "Allowing plaintiffs to recoup the property without full tender would give them an inequitable windfall, allowing them to evade their lawful debt." (*Stebley v. Litton Loan Servicing,*

26

*LLP* (2011) 202 Cal.App.4th 522, 526; see *Gavina v. Smith* (1944) 25 Cal.2d 501, 506.) However, the courts have recognized an exception in the case of a postsale foreclosure alleged to be a void sale. (See *Yvanova, supra*, 62 Cal.4th at p. 929, fn. 4 [noting "tender has been excused when, among other circumstances, the plaintiff alleges the foreclosure deed is facially void, as arguably is the case when the entity that initiated the sale lacked authority to do so"]; *Sciarratta, supra*, 247 Cal.App.4th at p. 565, fn. 10; *Glaski, supra*, 218 Cal.App.4th at p. 1100.)

We do not suggest that if the Parks are successful in their quiet title action that their prior secured debt will be extinguished. Under the circumstances here, if the Parks establish their right to retain title to the Property based on the void foreclosure sale, the quiet title action would place the Parks in their prior position before the void sale—with ownership of property secured by a debt reflected by the outstanding amounts owed on the Note. At that point, they will be required to satisfy their obligations under the Note, and if they do not do so, the lawful owner of the Note may be entitled to enforce its rights described in the Note and Deed of Trust.

## B. *Quality*

The court properly sustained the demurrer on the quiet title claim against Quality because the Parks did not allege any facts showing Quality has or claims any current interest in the Property. (See *West v. JPMorgan Chase Bank, N.A., supra*, 214 Cal.App.4th at pp. 802-803.)

During oral argument, the Parks' counsel suggested for the first time that Quality can be held liable on the quiet title claim based on alleged defects in the Substitution of

27

Trustee document. However, by failing to assert this contention in their appellate briefs with respect to their quiet title claim, the Parks have forfeited this claim as a basis for showing trial court error. (See *People v. Thompson* (2010) 49 Cal.4th 79, 110, fn. 13; *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6.)

In any event, the argument is without merit. The Substitution of Trustee form was recorded on November 30, 2009, and states that MERS (identified in the document as "the present beneficiary" under the Deed of Trust) substitutes Quality as trustee. The notarized document is signed by Mary Jane Sarne, identified as "Vice President" of MERS. The Parks argue this trustee substitution was unlawful because (1) Sarne allegedly was not an employee or officer of MERS, and instead was a Quality employee; and (2) "the agency agreement between MERS and [Lehman Brothers Bank]" had been "extinguished."

Civil Code section 2934a, subdivision (d) states: "A trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the mortgage or deed of trust for all purposes from the date the substitution is executed by the mortgagee, beneficiaries, or by their authorized agents. . . . Once recorded, the substitution shall constitute *conclusive* evidence of the authority of the substituted trustee or his or her agents to act pursuant to this section." (Italics added.)

Under this code section, once the Substitution of Trustee was recorded, Quality was the proper trustee to notice and conduct the sale as a matter of law. (See *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 871 (*Dimock*).) Additionally, a party does not have standing to challenge a trustee substitution unless he or she can show

28

prejudice. (See *U.S. Hertz, Inc. v. Niobrara Farms* (1974) 41 Cal.App.3d 68, 85.) Unlike a borrower's right to have only the current owner (or its agent) enforce the rights under the deed of trust, a borrower's "rights are in no manner affected" by any procedural irregularities underlying a *recorded* substitution of trustee. (*Ibid.*)

We reject the Parks' additional argument that MERS had no authority to substitute the trustee because an unidentified "agency agreement" between MERS and Lehman Brothers Bank had been extinguished. First, this factual assertion is not contained in the Parks' amended complaint. Additionally, regardless of the terms of an agency agreement between Lehman Brothers Bank and MERS, the express terms of the Deed of Trust govern the parties' rights in this case and under the Deed of Trust, MERS was a beneficial owner with rights to substitute the trustee. The courts have consistently recognized that in acting as a named nominee or beneficiary on a Deed of Trust, MERS has the unilateral authority to substitute the trustee on a deed of trust. (See *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1157-1158; *Siliga, supra*, 219 Cal.App.4th at pp. 83-84.)

Further, the Parks' reliance on *Dimock* is misplaced. (*Dimock, supra*, 81 Cal.App.4th 868.) In *Dimock*, this court reaffirmed that a recorded substitution of trustee is binding on the parties. (*Id.* at p. 871.) Applying this rule, we held that a foreclosure sale noticed by a former trustee (after a recorded substitution of a new trustee) was void because the *new substituted* trustee had the sole power to conduct the sale and convey the property. (*Id.* at pp. 874-875.) We explained that "[o]ther than by recording a further substitution there are no other statutory means by which the effect of a substitution, once

29

recorded, may be avoided." (*Id.* at p. 871.) Under this rule, Quality—as the substitute trustee by a recorded document—had the statutory authority to notice and conduct the sale.

Having reached this conclusion, we turn to the question of whether the Parks should be permitted to amend the complaint on their quiet title claim to add allegations against Quality. After examining the record and considering the parties' arguments, we conclude the Parks should be provided leave to amend on the issue of whether Quality (as the trustee at the alleged void foreclosure sale) is a necessary party on a quiet title action seeking to invalidate the sale. Because this issue had not been fully briefed and applicable law has been clarified since the court ruled on the demurrer, it is appropriate to allow the parties to address this issue on remand. To state a proper claim, the Parks must allege facts supporting a valid and legally-supported ground for holding Quality liable on the quiet title claim, and may not reassert theories rejected on this appeal.

### C. *Remaining Defendants*

With respect to Aurora Bank, the Parks have conceded the court properly sustained the demurrer without leave to amend on the quiet title claim.

Regarding U.S. Bank and MERS, the court properly sustained the demurrer on the quiet title claim as the Parks did not allege any facts showing these defendants have or claim any current interest in the Property. However, the Parks have alleged that they were not given accurate information regarding the Note holder and there appears to be a lack of clarity as to the prior and current claimed owners. The Parks thus should be given leave to amend their complaint to add facts (if any exist) supporting a quiet title cause of

30

action against U.S. Bank and/or MERS. In amending, the Parks must allege facts supporting a legally-supported ground for holding these parties liable on the quiet title claim, and may not reassert theories rejected on this appeal.

## V. *Proposed Additional Amendments*

In their briefs, the Parks contend that they could amend their complaint to add several causes of action: (1) cancellation of instruments; (2) tortious interference with contract; and (3) violation of Civil Code section 1788.17. Based on the Parks' concessions, we find no basis to permit these amendments against Aurora Bank. And because we are remanding this matter as to each of the other defendants, we need not address this argument as to these defendants. To the extent the Parks believe they can in good faith allege facts to support these causes of action against any remaining defendant, they may seek leave to do so in the trial court proceedings.

## VI. *Judicial Notice Request*

The Parks request that we take judicial notice of three attached exhibits. This court previously denied the motion as to two of these exhibits as they postdated the judgment. The third exhibit is a document entitled Notice of Rescission by Equity Owner of Trustees Deed Upon Sale. The document contains a recording date of December 22, 2010. We decline to take judicial notice of the document because there is no showing it was presented to the trial court for its consideration. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) In any event, even if we were to take judicial notice of the document, it has no relevance to the issues before us and would not change the outcome of this appeal. The document

31

was signed and recorded by Mr. Park, who had no authority to unilaterally rescind the sale.

## DISPOSITION

The judgment against Aurora Bank is affirmed.

The court is ordered to vacate the remaining portions of the judgment and enter a new order (1) as to Aurora Loan Services: (a) overruling the demurrer on the wrongful foreclosure, UCL, and quiet title claims; and (b) sustaining the demurrer without leave to amend on all other claims; (2) as to U.S. Bank, as trustee for the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-1, and as trustee for Lehman Mortgage Trust Mortgage Pass Through Certificates Series 2005-2: (a) sustaining the demurrer with leave to amend on the wrongful foreclosure, UCL, and quiet title claims; (b) sustaining the demurrer without leave to amend on all other claims alleged against it; (3) as to Nationstar: (a) overruling the demurrer on the quiet title claim; and (b) sustaining the demurrer without leave to amend on all other claims alleged against it; (4) as to MERS: (a) sustaining the demurrer with leave to amend on the wrongful foreclosure, UCL, and quiet title claims; (b) sustaining the demurrer without leave to amend on all other claims alleged against it; and (5) as to Quality: (a) sustaining the demurrer with leave to amend on the quiet title claim; and (b) sustaining the demurrer without leave to amend on all other causes of action alleged against it.

32

The parties to bear their own costs on appeal.


HALLER, J.

WE CONCUR:


NARES, Acting P. J.


O'ROURKE, J.